We'll move to our next case this morning, United States v. Henry Wood. All right, I see both. Counsel, can you both hear me? Yes, Your Honor. All right. Mr. Hillis, you may proceed. May it please the Court. Counsel, my name is Daniel Hillis. I'm with the Federal Public Defender's Office. I represent Henry Wood. And in this case, Mr. Wood is serving 168 months in prison due to images that were found on a cell phone. And that cell phone was unlawfully searched by the probation office. And thus, the evidence should have been suppressed. The district court determined otherwise. We believe the district court erred. And the reasons why the district court erred is that the search condition required that the officer who does the search believe that there is a violation of the search condition or an imminent violation of the other parole condition. So, there was no ongoing violation here as the parolee, Mr. Wood, had failed to attend a parole meeting. It was a completed violation. Therefore, the condition... Mr. Hillis? Yes, Your Honor. It sounds like a premise of your argument is that if there was a violation of state law, then the evidence must be suppressed in federal court. Is that a correct understanding? That's an aspect of it, but it's certainly not the only issue here, Your Honor. Well, let me tell you why I have trouble with that aspect of it. It's the Supreme Court's decision in Virginia against Moore in 2008 that a violation of state law is never a reason to suppress evidence in federal court. It just isn't.  Well, there'd be a couple of things with Moore that would be important, Your Honor, here. First being that the government would have had to raise that argument having not done so as a waiver problem. The government's free to waive issues, of course. It could have asserted Moore. It chose not to do so. So, there just isn't a Moore issue here in this case that the court should reach. Furthermore, Moore was concerned about an additional extension of rights afforded to the state. And here, reasonable suspicion should have been established before any search under any circumstance. And that just didn't exist here. There was no reasonable suspicion. And so, this is not a matter where, like in Moore, there was a concern about officer safety. Just many of the parameters that were at issue in Moore aren't present here. And, of course, having not argued Moore, the government shouldn't get the benefit of the Moore contention presently at this stage in the litigation. Mr. Hillis, will you address the government's argument with regard to waiver based upon the statements of Attorney Jones in the trial court, then the scope of the plea agreement that allows the appeal, and then the scope of what the district court decision is? That's their first argument in the red brief. What's your response to it? Oh, yeah. So, it's fairly straightforward, Judge. I believe the attorney in the trial level was trying not to overcomplicate matters. But ultimately, when he lands on this issue, with that page 63, and he said earlier he didn't know if this was a necessary issue for him to prevail. But ultimately, he's definitive that the condition did not allow the search, or rather there wasn't reasonable suspicion to conduct the search. And so, there is no waiver. The government would have the burden under Johnson v. Zerks to establish through the record with clear evidence that there was a waiver of this issue. And of course, the plea agreement itself says that my client is preserving the right to challenge the district court's order. The district court's order is much more wholesome than a forensic analysis. And so, while the government hangs its hat on select language, if we look ultimately to whether the record in this case establishes a waiver, as the government has the burden of proving under Johnson v. Zerks, ultimately, page 63 in the appendix is a definitive answer if the government could even characterize it as being ambiguous. The ambiguity would have to be construed against the government for purposes of trying to establish its waiver claim. Thank you. You're welcome. That brings us to the condition. And so, I'll begin by saying if this case comes out where the government prevails, I believe that we are squarely in the midst of a circuit split. Now, the government didn't raise the Virginia v. Moore argument in the United States v. Lara, in the United States v. Fletcher. The condition wasn't analyzed in those terms. So, that's one additional matter with Virginia v. Moore. But more importantly, the Fletcher case really establishes pretty similar facts to what we have here. And the Sixth Circuit rejected the government's suppression efforts. Now, strangely enough, or coincidentally enough, the district court in this case relied on the district court opinion in the United States v. Fletcher. And then, ultimately, the case is reversed on the appeal by the Sixth Circuit. So, apart from the circuit split that is looming here, we then have the condition itself. The condition talks about ongoing violation through the important use of the verb tense is. Under the Supreme Court precedent, we cite Carr, Gundy, Wilson. While the government calls this formalistic, it's not some imbricated effort on our part. We're just asking for the plain language to be applied. And the government ignores the plain language and brushes it off as formalistic. We think that's inconsistent with precedent where we say we have to apply the plain language. Not to mention this is a plural condition that's in the nature of a contract that has to be construed strictly against the drafter. But the Indiana legislature, or the governing body who issues the plural conditions, wanted to change them to be more expansive. It could have done so. It didn't. There's also a Riley issue that is part of all the problem here. And searching property is one thing, but Riley talks about property being of a different ilk than what we have in a cell phone. A cell phone is an expansive compendium of a person's efforts, digitally recorded, and so those actions, activities, etc. are subject to warrant requirements post-Riley. And Fletcher recognized this. There's a simple solution for any problem of this type. If the government sees it as a problem, they can have efforts to change what the parole conditions are. It could also have simply gotten a warrant. And if it had the evidence to do so, it would have. That brings me to the final point. It didn't happen. There were insufficient facts here ever to establish reasonable suspicion. The government principally points to my client's sort of nervousness in response to the parole officer's efforts to pick up the phone and search it. The problem is, under Arizona v. Hicks, the government never had the authority to its agent to pick up that phone and search it in the first place. So there is a Hicks issue here. And then pulling off the phone and pulling off the back of the phone and finding evidence, etc., there's nothing in the officer's report. And mind you, we have no testimony in the district court from any officer ever. We have just police officers' reports, which under United States v. Jordan, which cites Downey v. They're not especially entitled to some great presumption of accuracy and reliability in this report. But mind you, the report doesn't say anything about my client's criminal history informing the decision, such as reasonable suspicion. There's nothing about some prior conviction that leads to a reasonable suspicion by an officer that therefore there must be evidence of some additional criminal activity that's on this phone. There's none of that there. Those facts were at least present in Fletcher. They were present in United States v. Laira, the Ninth Circuit. They're not present here. So for all these reasons, we think that the case here dictates the result, and that is that the evidence should have been suppressed. With that, I'll reserve the balance of my time. That's fine. Thank you. Mr. Holler. Thank you. Good morning, Your Honors. And may it please the Court. The district court correctly concluded that the search of Wood's cell phone complied with the Fourth Amendment. Nothing in Riley v. California or any other constitutional heightens the Fourth Amendment standard for parole searches as it applies to cell phones. Your Honors, I believe the Court could, I believe that any claim of a state law violation here would not work under Virginia v. Moore. I do agree with the Court on that. To the extent that state law plays any role in the search of cell phones, I do believe that the Court recognizes that it falls under the totality of the circumstances, that what the parole agreement says is, quote, a salient condition that is considered as far as what the probationers or parolees' privacy interests are. And so in Samson, the agreement said that there was a suspicion the searches were okay, and the Supreme Court upheld that. And nothing about cell phones is in violation of that standard. Prior to the advent of cell phones, officers could broadly search parolees and probationers. They can still do so, even though now offenders like Mr. Wood keep their child pornography on phones instead of locked away in drawers or somewhere else in their house. To the extent that the parole agreement here is in any way relevant, the standard is just that there was reasonable cause to believe that the parolee is violating a condition to remaining on parole. The Indiana courts in Harper have interpreted this to allow a search anytime reasonable suspicion exists. There doesn't have to be any kind of probationary purpose. That's what the Court said in Schlecte. And the defendant is violating his parole. If the defendant is possessing child pornography, he is violating his phone. If it's not his phone, he doesn't have any Fourth Amendment interest in it. So it is his phone. He is violating his parole. And there's reasonable suspicion to search the phone under these circumstances. Reasonable suspicion is nowhere near the probable cause standard. It's just a particularized objective basis to think there might be criminal activity. Here the defendant kept turning toward his phone. He was looking at it. He was demanding it be turned off immediately. He was engaging in all kinds of activity that specifically drew attention to the phone. This case is therefore similar to Illinois v. Warlow where maybe you couldn't stop everybody who's present on a suspected drug deal at the west side of Chicago. But when somebody engages in headlong flight, they've drawn attention to themselves and you can go and stop them. Similarly here, when the defendant specifically drew attention to his phone, the officers could search it. Reasonable suspicion is based on common sense as the Supreme Court recently said in Kansas v. Glover. And it was common sense to think that there was something untoward about the phone based on Woods' overreaction. Mr. Holler, I'd like to pose the same question to you that I posed to Mr. Hillis with regard to waiver. What's your position with regard to Attorney Jones' statements at the time in the trial court, the scope of the plea agreement with regard to the appeal and the decision itself, whether there was waiver beyond a forensic examination? Yes, Your Honor. This is triply waived for all of those reasons. I see nothing on page 63 of the defendant's appendix that suggests in any way that anyone could reasonably think that he was preserving this issue. The page citations that we pointed out show that he was waiving this issue. Mr. Jones said on page 54, we are not going to argue with them taking apart the back of the phone and finding a packet of methamphetamine. The court asked, what about the search of the home? No issue with that as well. I mean, I know the government sometimes argues waiver when it should be argued in forfeiture, but that's about as clear as it can get for waiver. Beyond that, on page 57, Mr. Jones again says, I guess I could formulate an argument of whether or not they should have taken off the back of the cell phone. It's not that. This is a knowing and voluntary waiver. He's aware that he could make the argument, and he doesn't. To the extent that Mr. Hillis thinks something on page 63 changed that, Mr. Jones comes back again on page 83 of the appendix. We're not arguing peeling off the back of the cell phone case because the guy feels alone. We're not arguing about that. We're arguing about the search of a computer for somebody that's now under arrest. So I think we're done on that point. I just want to point out the plea agreement narrowly preserves the right to appeal the district court's order. And the district court in its order said, I find that you knowingly and voluntarily waived this argument. So even if some other judge might have thought somehow that this was preserved, Judge Lichty did not think that. And if Mr. Wood in the district court wanted to preserve that argument, he should have done something to alert the district court of that before he signed a plea agreement waiving his right to challenge any issue except those raised in the district court's opinion. Mr. Hillis argues the court would create a circuit split by ruling in the government's favor. The government disagrees with that completely. The two cases that he cites, Lara and Fletcher, both involve probationers. This involves parolees, which as a federal constitutional matter are subject to even lesser protections than probationers. That's Samson versus California. Whatever the state of Indiana thinks about the differences or the constitutional rights afforded them, the Samson versus California overrides that. Beyond that, the Johnson case from the Ninth Circuit shows that the Ninth Circuit doesn't think that parolees like Mr. Wood have these great constitutional protections that maybe probationers have. So I don't think that there is any argument that there's a circuit split with the Ninth. And as for the Sixth Circuit, Your Honor, while we do disagree with much of the Sixth Circuit's reasoning in Fletcher, the Sixth Circuit's bottom line holding was that there was no reasonable suspicion in that case because the only fact that the probation officer knew at the time of the search was that the probationer had two cell phones. And the mere fact that a cell phone was found is not reasonable suspicion. That factual distinction alone broadly distinguishes this case and thus does not create a circuit split. But at any rate, even if the court thought that there was some split, for all of the reasons that we've already stated, the district court got it right and the law is correct in our favor. There was no Fourth Amendment violation here and the judgment should be affirmed. If the court has no further questions, I would give back the balance of my time. Thank you. Mr. Holler. I'm sorry, Mr. Hillis. Thank you, Judge. So as per Fletcher, again, but there are more facts than what the government said that were pertinent to the Fletcher decision. So in Fletcher, the warrantless search was based on nervousness, the fact that he had two phones and he appeared to be deleting information. Of course, there's no destruction of evidence or anything like that, but the fact that he had the phone in their custody. Ultimately, those were not sufficient facts. We have fewer relevant facts here. We don't have a probationer or a goalie who's on probation or parole for a CP offense as in Fletcher. There's no linkage back to that sort of pertinent conviction that would allow for then the determination that the phone is likely to have criminal evidence on it relating to that type of crime. So we have less than we do in Fletcher, and Fletcher said get a warrant, and this isn't enough, and said that Riley demands more, and the government did less. The government could have done more here as well. It chose not to. It should now have to live with the consequences. Indiana does not have a functional distinction, rather, between probation and parole, so the government's effort to draw those fine line distinctions fail here. They don't amount to any difference. The Harper case had an ongoing violation of drug trafficking. Here we have a completed violation. It's a technical violation, failure to attend a parole meeting. Sampson had a suspicionless search condition. That's not what we have here. We have a condition that requires reasonable suspicion of an ongoing violation, so the reliance on Sampson is misplaced as well. Here, the government points to the CP, but there's no knowledge of the CP until the phone is deconstructed and then forensically examined, so we don't find methamphetamine until that happens. We don't know about CP until that happens, so the government's effort to say there's CP and therefore there's criminal activity is something that puts the horse before the cart before the horse, and we just can't allow that to happen here. This is not a ward-low decision either. This isn't somebody running headlong from law enforcement. This is somebody who demonstrates nervousness. There's no parity between those two circumstances, so the reliance on ward-low is misplaced as well. Finally, there are many reasons not to search, want to absolutely search your cell phone. You don't have to tell the government what those are. It may be that you don't like your probation officer, the judge who's supervising you, any number of things. It doesn't mean that by opposing, you give the government reasonable suspicion. By failing to say anything, you signal consent. The government's going to have us going both ways on this. Damned if you do, damned if you don't. That's not what the Fourth Amendment allows. It requires proof. It requires reasonable suspicion. In some circumstances, it requires probable cause. There is nothing here that allowed for a valid search to occur. Therefore, consistent with Fletcher, consistent with Lara, consistent with the Fourth Amendment, there is no reasonable suspicion, and ultimately, there cannot be a reliance on Virginia versus Moore when the government has the opportunity to raise that argument. 2008 Supreme Court decision. It chose not to. That issue, we believe, is off the table. Finally, page 63 of the appendix talks about, after some hemming and hawing, some decisions about whether this is important to raise or not, that ultimately what the defense attorney says in the case is that my client has privacy expectations. The triggering events or searches must be reasonable, and it has to be based on the search condition that there's reasonable suspicion of violation or an imminent danger of violating. That's not a waiver. He maintains, ultimately, that this has to be done. And even when he talks later on page 83 about whether or not the substance that is found through the manipulation of the cell phone case was properly found, he's basically explaining the Dickerson case, Minnesota versus Dickerson, in plain field. And he says it's not adequate to establish plain field. So even on page 83, that doesn't come to the government's rest. So for all of these reasons, we would ask the court to affirm, to avoid the circuit split, to find that the lack of reasonable suspicion and the condition here that specifically required proof of an ongoing violation are all things that line up in support of vacating and reversing the district court suppression decision, which, by the way, the plea language, the plea agreement language, if they wanted to be more restrictive, they could have included that. It is broad. It allows my client to challenge anything in the suppression order by the court in its opinion, and he has done so. There is no waiver here. There's nothing in the plea agreement that stops any of these challenges, and the government should live with the benefit of its bargain in entering the conditional plea agreement that affords my client a chance to challenge the entirety of the district court's determinations as expressed in its written plea. With that, I have nothing further. Thank you very much. Our thanks to both counsel. The case is taken